mind a manifest difference between removals for repair and the removals for work, which may justify this requirement of the statute. It is but natural that the master should have knowledge of the fact of a repair, and a removal of the guard therefor, but not that he should have knowledge of every removal for the doing of a certain kind of work. I think that the rule was stated correctly in our former opinion, that this defendant, when ignorant of the removal, was entitled to the benefit of a "reasonable time" as involved in the proposition of due care, and was not required to see that the guard was replaced forthwith, or "promptly" or immediately. See Labatt on Master and Servant (2d Ed.) vol. 5, § 1644. This discussion is not essential to the disposition of this appeal, for, as I have said, the learned court subsequently charged the jury correctly upon this feature of the case.

I advise that the judgment and order be reversed, and that a new trial be granted, costs to abide the event. All concur.

---

(85 Misc. Rep. 157)

### A. C. CHENEY PIANO CO. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Rensselaer County. April, 1914.)

1. CARRIERS (§ 159*) — LIABILITY — CONTRACT LIMITATION OF LIABILITY — WAIVER.

     A provision of a bill of lading that, unless a written claim for loss of goods be made within four months after expiration of a reasonable time for delivery, the carrier shall not be liable is waived, where the carrier, after expiration of the four-month period, at the consignor's suggestion, undertakes to trace the goods and invites the presentation of a claim for loss under the contract.

     [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–671, 699–703½, 711–714, 718, 718½; Dec. Dig. § 159.*]

2. CARRIERS (§ 159*) — LIABILITY — CONTRACT LIMITATION OF LIABILITY — WAIVER.

     Waiver of conditions limiting a carrier's liability need not be based on a new agreement or estoppel, but may rest in a donative purpose and be without consideration.

     [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–671, 699–703½, 711–714, 718, 718½; Dec. Dig. § 159.*]

Action by the A. C. Cheney Piano Company against the New York Central & Hudson River Railroad Company, for damages for nondelivery of a shipment of goods. Judgment for plaintiff.

Countryman, Nellis, Du Bois & McDermott, of Albany, for plaintiff.

Visscher, Whalen & Austin, of Albany, for defendant.

HASBROUCK, J. The plaintiff on the 24th and 31st days of January, 1910, delivered certain piano actions valued at $440.25 to the defendant at Castleton, N. Y., for shipment to the Starr Piano Action Company, Richmond, Ind. The defendant gave the plaintiff upon re-

ceipt of such goods its bill of lading containing, among other terms, the following:

### "Conditions of shipment.

"Claims for loss * * * must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property or in case of failure to make delivery then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

The obligation of the carrier to the consignor is to carry his consignment to the consignee whether the carriage shall all be performed by the contracting carrier or other carriers it may call to its agency in the performance of its duty. This is so no matter by what authority the duty is imposed, whether it arises from the contract of the parties or the provisions of the state statute or the federal statute. No delivery was made of the piano actions. They were lost. The record before us shows no written communication between the plaintiff and defendant until July 11, 1910. On that day, the plaintiff wrote the defendant's freight agent at "the point of origin," Castleton, N. Y., as follows:

"Please have the following tracers put through and return to us at your earliest convenience. We have once before asked you to trace these shipments and as our customer claims that they have not received the three cases of actions we are anxious to show that delivery was made. * * *

"Yours very truly,                    ,            Cheney Piano Action Co." ·

Tracers.

" * * * Trace and show delivery of case of actions No. 94 shipped January 24, 1910.

" * * * Trace and show delivery of case of actions No. 96–97 shipped January 31, 1910. * * * "

Mr. Willis forwarded a tracer letter to the Chicago, Cincinnati & Louisville Railroad Company, but could not learn from that company that delivery had been made.

On July sixteenth in reply to the letter dated July 11, 1910, the division freight agent wrote the plaintiff:

"I beg to acknowledge the receipt of your letter of July 14th regarding deliveries in Chicago. I have to-day taken the matter up with our Chicago people to see what we can do to effect the delivery required. * * *

"[Signed]   Alan McMichael, Div. Freight Agt."

Again, on August 3, 1910, the defendant wrote the plaintiff:

"I beg to acknowledge receipt of your letter of August 2d regarding two cases of actions shipped by you January 24th and 30th last consigned to the Starr Piano Co., Richmond, Ind., which you state have not arrived at destination. It would seem that if these shipments have not yet been received at destination they must have been lost in transit. My suggestion is that you duplicate the shipment and enter claim against our road. * * * "

On August fourth the plaintiff wrote the defendant:

"Inclosed please find invoice covering three cases of piano actions conveyed to Starr Piano Company, Richmond, Ind., which they have not received and we have not been able to get a tracer back. * * * We feel that it is no more than fair that this claim should be immediately allowed. We have sent three or four tracers after the shipment but have not received them back undoubtedly the shipments were lost in transit. * * * "

Stipulation 14 of the parties to the action reads as follows:

"The average time for the delivery of merchandise shipped in less than car load lots from Castleton, N. Y., to Richmond, Ind., is from 15 to 16 days."

Assuming that a reasonable time for the delivery of these goods would have been 30 days, the four months would have commenced to run as to the last shipment at the expiration of March 2d, and would have expired July 2, 1910. The defendant claims that the bar of the limitation contained in the bill of lading within which claims for loss might have been presented has fallen. The plaintiff's answer to such claim is, conceding it to be true, the defendant has waived it by undertaking to trace the goods and inviting the presentation of a claim for loss under the contract. The hunt for the goods was undertaken by defendant in its own interest, for if it could find the goods it could save itself from claim for damages and payment. The correspondence shows further that the railroad company had conceded its obligation to pay.

[1] Nevertheless, defendant eventually took the stand that it was not liable because of the more than four months' delay to make the claim. It claims that there was no waiver in its action in sending out the tracers and in inviting the plaintiff to file its claim. It relies on Atlantic Coast Line R. R. Co. v. Bryan, 109 Va. 523, 65 S. E. 30, which says:

"A waiver, to operate as such, must arise either by contract, or by estoppel. If by contract, it must be supported like any other contract by a valuable consideration. If estoppel by conduct is relied on, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than he would have occupied but for that conduct."

And that:

"An attempt by a carrier to find a lost shipment after its exemption from liability has attached and become a vested right by reason of the failure * * * to present a claim therefor within the time and at the place stipulated for in the bill of lading, does not constitute a waiver of its right to claim such exemption, if the goods should not be located."

[2] The facts as far as the court has found them are that the four months had expired before July 11, 1910.. Then the defendant had the right to say: You have not presented your claim in time. You have forfeited your right to make a claim against us for the actions. If it had taken that position there might have been an end to its trouble depending upon what should be held a reasonable time "for delivery." But a more prudent way suggested itself to the company. It sought to find the goods, in recognition of its obligation to the shipper, by sending out several tracers and by inviting the filing of a claim. If it had traced the goods to discovery or delivery, it would have freed itself from claim and loss. It is inconsistent with the claim of immunity from liability that it should recognize any obligation to the plaintiff after the expiration of the four months. From the conduct of the defendant we think the intention to waive the four months' provision of the bill of lading is fairly inferable. The lapse of time does not pay the debt, perform the contract, nor deliver the goods. The moral obligation survives the limitation. The courts of our state seem to be

at variance with the authorities relied upon by the defendant. Waiver may rest in a donative purpose and be without consideration. It need not be based upon a new agreement or estoppel. Waiver may be claimed after knowledge of the forfeiture if in any negotiations or transactions between parties the claimant recognizes the continued validity of the contract, does any act based thereon, or requires the other party to do some act or incur some trouble or expense.

Earl, J., says:

"Forfeitures are not favored in the law, and this doctrine of waiver is not peculiar to insurance policies, but is applicable to all cases of forfeiture." Titus v. Glens Falls Insurance Co., 81 N. Y. 419.

Judgment for the plaintiff for $440.25.
Judgment for plaintiff.